IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACKIE BIANCHI, for her minor )
child J.B., )
 )
        Plaintiff, )
 )
                                  )    No. 13 CV 1254
     v. )
 )   Magistrate Judge
CAROLYN W. COLVIN,[1] )   Jeffrey T. Gilbert
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
 )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Claimant Jackie Bianchi is seeking to recover supplemental security income pursuant to the Social Security Act, 42 U.S.C. § 1382c(a)(3), on behalf of her minor son J.B. This is an appeal of the denial of Claimant's application for supplement security income. Claimant seeks reversal or remand of the decision of Defendant Carolyn Colvin, Acting Commissioner of Social Security ("Commissioner"), denying the application for supplemental security income. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 for all proceedings, including entry of final judgment.

This matter is before the Court on the parties' cross-motions for summary judgment [ECF 16, 26]. For the reasons stated herein, Claimant's Motion [ECF 16] is granted, and the Commissioner's Motion [ECF 26] is denied. This case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin automatically is substituted as the Defendant in the case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Claimant filed an application for supplemental security income on July 28, 2010, alleging a disability onset date of April1 19, 2010. (R. 12). J.B. suffers from attention deficit hyperactivity disorder, oppositional defiant disorder and bipolar disorder. (R. 15). Claimant's application for benefits was denied on October 6, 2010 and again after reconsideration on January 12, 2011. (R. 12). Claimant requested a hearing before an Administrative Law Judge ("ALJ") on January 25, 2001. (R. 12). Claimant, J.B. and one other witness appeared and testified at a hearing before ALJ Curt Marcelle on August 9, 2011. (R. 12). Claimant was represented by an attorney at the hearing. (R. 12).

On August 18, 2011, the ALJ denied Claimant's application for supplemental security income and found that J.B. was not disabled under section 1614(a)(3)(c) of the Social Security Act. (R. 25). A child is disabled under the Social Security Act if the child is not engaged in substantial gainful activity and has a medically determinable physical or mental impairment or combination of impairments that causes marked or severe functional limitations that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 416.906.

A child's impairments, or combination of impairments, must meet, medically equal, or be functionally equal to a listing. 20 C.F.R. § 416.924(d). In determining whether an impairment or combination of impairments functionally equals the listing, an ALJ must assess the child's functioning in terms of six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b). To functionally equal a listing, the child's impairment, or combination of impairments, must cause a

"marked" limitation in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(d).

In this case, the ALJ determined that J.B. was a school-age child on July 28, 2010, the date the application was filed, and had not engaged in substantial gainful activity. (R. 15). The ALJ also found that J.B. had the severe impairments of attention deficit hyperactivity disorder, oppositional defiant disorder and bipolar disorder. (R. 15). The ALJ, however, found that none of J.B.'s impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926). The ALJ also determined that J.B. did not have an impairment or combination of impairments that functionally equaled the severity of any listing. (R. 16-24). As a result, the ALJ concluded that J.B. was not disabled under section 1614(a)(3)(C) as defined in the Social Security Act since July 28, 2010, the date Claimant filed the application. (R. 25).

Claimant appealed the ALJ's decision to the Appeals Council on September 26, 2011. (R. 140). The Appeals Council denied Claimant's request for review on December 21, 2012, leaving the ALJ's decision as the final decision of the Commissioner. (R. 3).

## II. ANALYSIS

Claimant argues that this matter should be reversed or remanded because: (1) the ALJ failed to analyze properly J.B.'s functional limitations within the six domains, and (2) the ALJ failed to evaluate properly the credibility of Claimant, J.B. and another witness Jason Vanderwall, who is Claimant's boyfriend. After reviewing the parties' briefs and the administrative record, the Court concludes that (1) the ALJ's analysis of J.B.'s functional limitations within the six domains is not supported by substantial evidence and the ALJ did not

3

adequately account for J.B.'s limitations in his functional equivalence analysis and that (2) the ALJ's credibility analysis is flawed. Therefore, remand is appropriate.

A.     THE ALJ'S FUNCTIONAL EQUIVALNECE ANALYSIS IS FLAWED

Claimant argues that the ALJ failed to analyze properly the severity of J.B.'s limitations in the domains of Caring for Yourself and Interacting with Others. [ECF 17], at 10-13. In response to Claimant's arguments, the Commissioner responds that the ALJ reasonably relied on the opinions of two State agency medical consultants when analyzing J.B.'s limitations within the six domains and in making his functional equivalence determination. [ECF 27], 4-5. The Commissioner's response, however, does not address the arguments advanced by Claimant that the ALJ's functional equivalence analysis is flawed because he failed to consider relevant evidence which contradicted his findings. *See* [ECF 17], at 10-13.

A child has a marked limitation in a domain when the child's impairment "interferes seriously" with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(2). The Seventh Circuit has held that an ALJ has a duty to fully develop the record before drawing any conclusions. *Murphy v. Astrue*, 496 F.3d 630 (7th Cir. 2007). "The ALJ must consider 'all relevant evidence' and may not analyze only that information supporting the ALJ's final conclusion." *Godbey v. Apfel*, 238 803, 808 (7th Cir. 2000) (citing *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000)). An ALJ also may not simply list evidence that is relevant to his determination, but must draw a "logical bridge" between evidence and his ultimate conclusion. *Giles ex rel Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007).

**i. Caring for Yourself**

Social Security Regulation ("SSR") 09-7p provides that an ALJ must consider evidence of a child's "ability to maintain a healthy emotional and physical state" in determining whether

and to what extent the child has a limitation in the domain of Caring for Yourself. SSR 09-7p. This includes how a child copes with stress and changes in environment and takes care of his own health, possessions and living area. SSR 09-7p. The ALJ found that J.B. has a less than marked limitation in Caring for Yourself because "he watches television, plays video games, goes onto the computer, plays with his toys, goes swimming, plays soccer with his brother, plays on the swing, and plays tag." (R.24). Claimant argues that these activities are not related to self-care and that the ALJ failed to explain how J.B.'s participation in these activities supported a finding that he has a less than marked limitation in caring for himself. The Court agrees with Claimant.

It is unclear, and the ALJ failed to explain, how watching television and playing video games relate to J.B.'s ability to care for himself as defined by the Social Security regulation. The ALJ also failed to discuss other evidence in the record that the Court believes should have been considered, or at a minimum addressed, when the ALJ determined what limitations J.B. has in caring for himself. For example, Claimant testified that J.B. will not put on clean clothes without prompting and will not bathe or brush his teeth on his own. (R. 63). Mr. Vanderwall corroborated Claimant's testimony. (R. 68). Evidence in the record also reveals that J.B. frequently wets his bed (R. 52) and testing for his IEP revealed that J.B. does not notice when his face and hands are dirty (R. 305). There also is evidence that J.B. struggles to maintain a healthy emotional state. His teachers note that he often is inflexible, withdraws with change, and gets frustrated easily. (R.305). Evidence in the record also reveals that J.B. exhibits extreme anxiety on the Burns anxiety test and demonstrates moderately elevated anxiety and depression on the Beck Youth Inventory Scales. (R. 341).

The ALJ's failure to address any of this evidence prevents a meaningful review of his analysis. It is unclear whether the ALJ considered this evidence and rejected it without explanation or whether he cherry picked only the evidence that supported his finding. Either way, the ALJ failed to build a logical bridge between the evidence and his conclusion, and remand is necessary.

### ii. Interacting and Relating with Others

Social Security Regulation 09-5p requires that the ALJ analyze both the child's ability "to form and sustain relationships with family members, friends, and others" and the child's "response to persons in authority, compliance with rules, and regard for the possessions of others." SSR 09-5p. In finding that J.B. has a less than marked limitation in the domain of Interacting and Relating with Others, the ALJ relied heavily on older reports from Claimant and J.B.'s teacher, which state that J.B. has some friends and was not, at the time, having problems with other students. (R. 21-22). Claimant, however argues that the ALJ ignored other evidence that contradicts his findings and demonstrates that J.B. was struggling with his friendships and relationship with adults. *See e.g.,* (R. 62, 271, 303, 305). The Court agrees with Claimant.

The ALJ's analysis is predicated on inconsistencies he identified in statements Claimant made in 2010 and subsequently at the hearing and in other reports in the record. Specifically, the ALJ noted that in January 2010, Claimant reported that J.B. did not have any problems with social functioning, had lots of friends, and played with children his age. (R.17). At the hearing, however, Claimant testified that J.B. did not have any friends and was not getting along with his peers and that J.B. had difficulty playing with others if he did not get his way. (R.17).

In addition, there is testimony and evidence from both Claimant and J.B.'s teachers that J.B. has difficulty interacting with adults and his teachers. Both of J.B.'s IEP teachers reported

that he frequently is defiant and argumentative in the classroom. (R. 303). Claimant reported that J.B.'s typical response to discipline is to talk back and argue, and one of the doctors who evaluated J.B. noted that J.B. often argues with adults and refuses to comply with adults' requests or rules. (R. 271). There is other evidence that J.B has no regard for other people's possession. Both Claimant and J.B.'s teachers reported that J.B. steals snacks from other students. (R. 303).

The record also seems to shows that J.B.'s impairments may have progressed over time and the ALJ did not consider any progression of impairments and how that may have impacted inconsistencies in the record. In January 2010, J.B. was diagnosed with adjustment disorder and ADHD was ruled out. (R. 265). In February 2011, however, J.B. was diagnosed with ADHD and then later in 2011, the diagnosis was ADHD was confirmed with conduct disorder and possible bi-polar disorder. (R. 353). Also, medications were added and increased (R. 269, 271, 267), and an IEP was established to address J.B.'s behavior and self-regulations issues (R. 302-19). Again the ALJ's failure to address any of this evidence prevents a meaningful review of his conclusions. It is unclear whether the ALJ considered this evidence and rejected it without explanation or whether he cherry picked only the evidence that supported his finding. Either way, the ALJ failed to build a logical bridge between the evidence and his conclusion, and remand is necessary.

## B. The ALJ's Credibility Determination Is Flawed

Claimant also argues that the ALJ erred in his credibility analysis. Claimant argues that the ALJ essentially cherry picked the testimony that supported his findings and disregarded witnesses' testimony that was inconsistent with his findings. [ECF 17], at 14-15. The Court agrees.

7

The ALJ is in the best position to determine the credibility of witnesses, and this Court reviews that determination deferentially. *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008) (citing *Sims v. Barnhart,* 442 F.3d 536, 538 (7th Cir. 2006)). In other words, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Id.* To be patently wrong, an ALJ's determination must lack "any explanation or support." *Elder v. Astrue,* 529 F.3d 408, 413–14 (7th Cir. 2008). The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. Although an ALJ's credibility determination is entitled to special deference, an ALJ still is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination only may be upheld if he gives specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue,* 582 F.3d 672, 676 (7th Cir. 2009).

In this case, the ALJ held that Claimant's statements concerning "the intensity, persistence and limiting effects of [J.B.'s] symptoms are not credible to the extent they are inconsistent with finding that [J.B.] does not have an impairment or combination of impairments that functionally equals the listing...." (R. 17). Such language, however, without more of a rationale in the record, has been deemed "meaningless boilerplate" and criticized for providing "no clue" as to the weight the ALJ gave a claimant's testimony. *Martinez et. al. v. Astrue,* 630 F.3d 693 (7th Cir. 2011) (rejecting boilerplate credibility determination); *Parker et. al. v. Astrue,* 597 F.3d 920, 922 (7th Cir. 2010) ("It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness' testimony is 'not entirely credible'

8

yields no clue to what weight the trier of fact gave the testimony."); *Mendez v. Barnhart*, 439 F.3d 360, 363 (7th Cir. 2006) (indicating that a partially credible determination that the person is credible, but not to the extent alleged, is an odd finding and unclear in meaning). The criticisms identified in these cases are particularly true here because the ALJ does not provide any rationale or specific reason for why he believes some of Claimant's testimony about her son's condition and limitations but not other testimony.

For example, Claimant testified that J.B. gets in trouble in school because he is fidgety, can't stay still, and does whatever he wants. (R.53-54). In J.B.'s IEP evaluation, his teachers reported similar difficulty with task initiation, task completion, organization, sitting still, and paying attentions in the classroom. (R.303). The ALJ, however, ignored this corroborating evidence in disregarding Claimant and J.B.'s testimony while at the same time using their testimony or reports as determinative when it suited his purpose.

As another example, the ALJ found Claimant's testimony that J.B. had friends credible but did not find credible Claimant's testimony that J.B. had difficulty caring for himself and did not bathe or brush his teeth with prompts (R.24) and there is corroborating testimony from Claimant's boyfriend that J.B. will not shower or brush his teeth with being told to do so (R. 68) and testing for his IEP revealed that J.B. does not notice when his face and hands are dirty (R. 305). The ALJ does not address this contradiction and, therefore, failed to build an accurate and logical bridge between the evidence and his conclusions.

The ALJ's failure to provide any rationale for why he believes some of Claimant's testimony but not other testimony prevents meaningful review of the ALJ's opinion and in particular his credibility analysis. Therefore, remand is required.

9

## III. CONCLUSION

For the reasons set forth above, Claimant's motion for summary judgment [ECF 16] is granted, and the Commissioner's motion for summary judgment [ECF 26] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 29, 2015